## THE CENTRAL RAILROAD vs. BRYANT, for use.

[Jackson, C. J., did not preside, on account of providential cause.]

1. While, in the absence of a special contract, the liability of a railroad transporting live stock is that of a common carrier, and while it is bound to exercise extraordinary diligence, and would be liable for any loss not occasioned by the acts of God or the public enemy; and while a common carrier cannot limit its legal liability by any notice given, either by publication or by entry on receipts given or tickets sold, it may make an express contract, and will then be governed thereby. The contract becomes the rule by which the parties are governed, instead of the general law governing common carriers.

(a.) The charge of the court as to the liabilities of common carriers was inapplicable, and calculated to mislead and confuse the jury.

2. Under the contract in this case, the railroad was only bound for damages caused by the negligence of its servants or agent. It was not bound to feed, water or care for the mules transported, but that duty was assumed by the shipper, to whom free transportation was furnished for that purpose. If, therefore, the mules sustained any injury or damage from want of food or water, the railroad is not liable therefor.

October 2, 1884.

Railroads. Common Carriers. Contracts. Live Stock. Before Judge FORT. Sumter Superior Court. April Adjourned Term. 1884

Reported in the decision

LYON & GRESHAM, for plaintiff in error.

W. A. HAWKINS; C. F. CRISP; B. P. HOLLIS, for defendant.

BLANDFORD, Justice.

The defendant in error brought his action against plaintiff in error for injury to certain mules, which he alleged that he had sustained by negligence of the servants of plaintiff in error in running their cars on the

Southwestern Railroad from the city of Macon to the city of Americus, Georgia.

The defendant in the court below, among other things, pleaded a special contract between the parties, of which the following is a copy:

"LOUISVILLE STATION, January 15th, 1883.

" Agreement, made between the Louisville and Nashville Railroad Company and its connecting lines, of the first part, and J. H. Bryant, of the second part, witnesseth that, whereas the said Louis-- ville and Nashville Railroad Company and its connecting lines, as common carriers, transport live stock only as per above tariff: now, in consideration that the said party of the first part will transport for the said party of the second part one car load of stock, —— head, more or less, from Louisville to Americus, Georgia, station, at the rate of $151.00 per car load, and a free passage to the owner, or his agent, on the train with the stock (if shipped in car load quantities), the same being a special rate, lower than the regular rate mentioned in the said tariff, the said party of the second part thereby relieves said party of the first part from the liability of a common carrier in the transportation of said stock, and agrees that such liability shall be only that of a private carrier hire; and it is further distinctly understood by the parties hereto that all liability of said Louisville and Nashville Railroad Company, as carriers, shall cease at Nashville, Tennessee, when ready to be delivered to the owner, consignee or carrier whose line may constitute a part of the route to distination.

"And said party of the second part hereby accepts, for said transportation, the cars provided by said company, and used for shipment of said stock, and hereby assumes all risk of injury which the animals, or any of them, may receive in consequence of either or any of them being wild, unruly or weak, or maiming each other or themselves, or in consequence of heat or suffocation, or other ill effects of being crowded in the cars, or on account of being injured by the burning of hay, straw or other material used by the owner for feeding the stock or otherwise; and also all risk of damage or injury or loss whatever which may be sustained by reason of any delay or detention in such transportation, whether occasioned by any mob, strike or threatened violence to person or property from any source, or injury to track or yards, or any or all other causes, whether mentioned, or not; and all risk of the escape of portion of said stock, or of loss or damage from any cause or thing, not resulting from the negligence of the agents of said party of the first part.

"And said party of the second part further agrees that he will load and unload said stock at his own risk, and feed, and water, and attend the same at his own expense and risk, while it is in the stock-

yards of the party of the first part awaiting shipment, and while on the cars, or at feeding or transfer points, or where it may be unloaded for any purpose.

"And it is further agreed that said party of the second part will see that said stock is securely placed in the cars furnished, and that the cars are securely and properly fastened, so as to prevent the escape of said stock therefrom.

"And it is further agreed that, while employés of the said party of the first part shall provide the owner, or person in charge of the stock, all proper facilities, on trains and at stations, for taking care of the same, the business of the said party of the first part shall not be delayed by the detention of trains to unload and reload stock for any cause whatever; but cars may be left at a station upon the request of a person in charge of the same, and unloaded and reloaded by him, to be forwarded by the next freight train, if he so directs; and said party of the second part hereby agrees that said party of the first part shall not be held liable for any damage or injury that may occur to said stock during the time the same may remain unloaded and out of the cars as aforesaid; and in case said stock is kept over at any given point by the said party of the second part, or his agent, beyond a reasonable length of time, for feeding and watering, subject always to local laws of any state through which it may pass while in transit, then this contract shall be held voidable at the option of the said party of the first part; in which case such rates of freight may be imposed and collected by said party of the first part, as may be deemed proper, not to exceed local rates to such point of detention.

"And it is further agreed that, in case of accident to, or delay of, trains, from any cause whatever, the owner and shipper is to feed, water and take proper care of stock at his own expense.

"And it is further agreed that the owner and shipper, or his agent or agents in charge of said stock, shall ride upon the freight train upon which the stock is transported.

"It is further understood and agreed that the presentation of this bill of lading shall be sufficient evidence of ownership to relieve and release the said party of the first part from all liability on account of wrong delivery, but shall not be held to operate against the rights of the said party of the first part to demand, if they elect, the identification of the party presenting this contract before delivering the said stock to him.

"And it is further agreed that, should damage occur, for which the said party of the first part may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed, for a stallion or jack, $200.00; for a horse or mule, $100,00; cattle, $30.00 each; other animals, $15.00 each.

"And it is further agreed that, in case the said party of the first part

shall furnish laborers to assist in loading and unloading said stock, they shall be subject to the orders, and deemed employés of, said party of the second part while so assisting.

"And, for the consideration before mentioned, said party of the second part further agrees that, as a condition precedent to his right to recover any damages for loss or injury to said stock, he will give notice in writing of his claim thereof to some officer of said party of the first part, or its nearest station agent, before said stock is removed from the place of destination above mentioned, or from the place of delivery of the same to said party of the second part, and before said stock is mingled with other stock.

"The evidence that the said party of the second part, after a full understanding thereof, assents to all the conditions of the foregoing contract, is his signature hereto.

Witness,                                  T. J. KEAN,

F. RINK.                (per Cuniffe) Agent for the Company.

J. H. BRYANT, Owner and Shipper."

On the back of this contract is the following entry:

" Pass J. H. Bryant to Chattanooga, on No. 5, account stock. 1–7, 1883.                                       G. KILTEM."

A verdict was had for the plaintiff below. The defendant moved for a new trial, on various grounds, which was refused by the court, and this is excepted to, and error is assigned thereon to this court.

What is the liability of the railroad company under the special contract between the parties in this case ? The court below virtually charged the jury that the liability of plaintiff in error was that of a common carrier; that it was bound to exercise extraordinary diligence, and was liable for any loss not occasioned by the act of God or the public enemy.

We think that this was error. The rule charged would probably have been correct but for the special contract in this case. " A common carrier cannot limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract, and will then be governed thereby." Code, §2068. So it seems that when a common carrier makes an express contract, that the contract is the rule by

which the parties are governed, and not the general law as to the liability of common carriers, and the intent of the parties to the contract is to measure their rights and liabilities, and not the law which governs common carriers. It is quite manifest, from the facts contained in the record, that the contract set out was made by the defendant in error; that the agent who signed the same had authority so to do; that it was accepted and acted on by them. It being a legal contract, the parties are bound thereby; and the liability of plaintiff in error, under this contract, not being that of a common carrier, it must follow that the whole charge of the court as to the liabilities of common carriers was inapplicable in this case, and was calculated to mislead and confuse the jury, however right it may have been abstractly.

Under this contract, the plaintiff in error was only bound for damage caused by the negligence of its servants or agents. If there was any negligence on the part of the servants and agents of the plaintiff in error, the record wholly fails to disclose it.

And if there had been such negligence, it nowhere appears that the defendant in error was injured or damaged thereby. By the contract, the railroad company were not bound to care for the mules. The defendant in error agreed to assume this duty, and relieved the carrier of the same; free transportation was furnished him for this purpose, and if the mules sustained an injury or damage for the want of food or water, the plaintiff in error is not liable therefor. The contract relieves it from such liability.

The evidence showed that while the mules were being transported from Macon to Americus, that a rail was broken, which threw some of the cars off of the track, but the mules being in that section of the train towards Americus, the engineer started on, when shortly afterwards it was discovered that a box of one of the wheels of the car in which the mules were was broken. The car with the mules was detained some twenty-four hours, in

which time the mules had neither food nor water; the defendant in error nor any agents of his was with the train. There was no apparent injury or damage to the mules caused by the accident to the train. When the mules arrived at Americus, which was at 2 o'clock A. M., they were delivered to defendant in error. On the next morning, after sunrise, it was discovered that some of them were stiff and foundered. The mules had been watered and fed by defendant in error after they had been delivered in Americus. It requires but little experience or knowledge for one to determine what caused the founder and stiffness to these mules. Being deprived of food and water by the inattention of the owner, whose duty it was, under the contract, to have supplied them, for more than twenty-four hours, when they were allowed the free use of the same by the defendant in error, it is quite probable that this caused the stiffness and founder. How, then, can the railroad company be liable? What did it do or fail to do, under the facts of this case, to render it liable? We are at an utter loss to discover an affirmative answer to these questions. The verdict of the jury is without evidence to support it, and is contrary to the law as applicable to the facts of this case; it is likewise contrary to the principles of justice and equity; and the court should have granted the new trial prayed for in this case.

Judgment reversed.