# LITCHFIELD *v.* BALLOU & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF ILLINOIS.

Submitted January 9, 1885.—Decided April 6, 1885.

When a bill in chancery sets forth facts which would support an action at law
for money loaned and received, the latter is the appropriate remedy; and
the bill fails for want of equitable jurisdiction.

A provision in a State Constitution that municipal corporations shall not be-
come indebted in any manner nor for any purpose to an amount exceeding
five per cent. of the taxable property therein, forbids implied as well as
expressed indebtedness, and is as binding on a court of equity as on a court
of law.

A creditor who has loaned to a municipal corporation (in excess of the amount
of indebtedness authorized by the Constitution of the State), money which
has been used in part for the construction of public works, is not entitled
to a decree in equity for the return of his money, because the municipality
has parted with that specific money, and it cannot be identified.

A bill in equity praying for the return to the plaintiff of specified, identical
moneys borrowed by a municipal corporation from him in violation of law
will not support a general decree that there is due from the municipality
to him a sum named which is equal to the amount borrowed.

A constitutional provision forbidding a municipality from borrowing money,
operates equally to prevent moneys loaned to it in violation of this provi-
sion, and used in the construction of a public work, from becoming a lien
upon the works constructed with it.

This was a bill in chancery to enforce payment of moneys
loaned to a municipality in violation of law, and for which
it had been held that an action could not be maintained
at law. *Buchanan* v. *Litchfield*, 102 U. S. 278. The facts
making the case are stated in the opinion of the court.

*Mr. John M. Palmer* and *Mr. B. S. Edwards* for appellant.

*Mr. D. T. Littler* for appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from a decree in chancery of the Circuit
Court for the Southern District of Illinois.

The suit was commenced by a bill brought by Ballou against

the city of Litchfield. Complainant alleges that he is the owner of bonds issued by the city of Litchfield to a very considerable amount. That the money received by the city for the sale to him of these bonds was used in the construction of a system of water works for the city, of which the city is now the owner. He alleges that one Buchanan, who was the owner of some of these bonds, brought suit on them in the same court and was defeated in his action in the Circuit Court and in the Supreme Court of the United States, both of which courts held the bonds void.

He now alleges' that, though the bonds are void, the city is liable to him for the money it received of him, and as by the use of that money the water works were constructed, he prays for a decree against the city for the amount, and if it is not paid within a reasonable time to be fixed by the court, that the water works of the city be sold to satisfy the decree. The bill also charges that he was misled to purchase the bonds by the false statements of the officers, agents and attorneys of the city, that the bonds were valid. Other parties came into the litigation, and answers were filed. The answer of the city denies any false representations as to the character of the bonds, denies that all the money received for them went into the water works, but part of it was used for other purposes, and avers that a larger part of the sum paid for the water works came from other sources than the sale of these bonds, and it cannot now be ascertained how much of that money went into the works.

The case came to issue and some testimony was taken, the substance of which is that much the larger part of the money for which the bonds were sold was used to pay the contractors who built the water works, while a very considerable propor- tion of the cost of these works was paid for out of taxation and other resources than the bonds.

There is no evidence of any false or fraudulent representa- tions by the authorized agents of the city.

The bonds were held void in the case of *Buchanan* v. *Litch- field*, 102 U. S. 278, because they were issued in violation of the following provision of the Constitution of Illinois:

## "ARTICLE IX.

"SECTION 12. No county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness."

It was made to appear as a fact in that case, that at the time the bonds were issued the city had a pre-existing indebtedness exceeding five per cent. of the value of its taxable property, as ascertained by its last assessment for State and county taxes.

The bill in this case is based upon the fact that the *bonds are* for that reason void, and it makes the record of the proceedings in that suit an exhibit in this. But the complainant insists that, though the bonds are void, the city is bound, *ex æquo et bono*, to return the money it received for them. It therefore prays for a decree against the city for the amount of the money so received.

There are two objections to this proposition: 1. If the city is liable for this money an action at law is the appropriate remedy. The action for money had and received to plaintiffs' use is the usual and adequate remedy in such cases where the claim is well founded, and the judgment at law would be the exact equivalent of what is prayed for in this bill, namely, a decree for the amount against the city, to be paid within the time fixed by it for ulterior proceedings.

In this view the present bill fails for want of equitable jurisdiction.

2. But there is no more reason for a recovery on the *implied* contract to repay the money, than on the *express* contract found in the bonds.

The language of the Constitution is that no city, &c., "shall be allowed to become *indebted in ny manner or for any purpose* to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of its taxable property." It shall not *become indebted*. Shall not incur any pecuniary liability. It shall not do this in *any manner.*

Neither by bonds, nor notes, nor by express or implied promises. Nor shall it be done for any *purpose.* No matter how urgent, how useful, how unanimous the wish. There stands the existing indebtedness to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt, in any manner, or for any purpose whatever.

If this prohibition is worth anything it is as effectual against the implied as the express promise, and is as binding in a court of chancery as a court of law.

Counsel for appellee in their brief, recognizing the difficulty here pointed out, present their view of the case in the following language:

"The theory of relief assumed by the bill is, that notwithstanding the bonds were wholly invalid, and no suit at law could be successfully maintained either upon the bonds or upon any contract as such growing out of the bonds, yet as the City of Litchfield is in possession of the money received for the bonds, or, which is the same thing, its equivalent in property identified as having been procured with this money and having repudiated and disclaimed its liability in respect of the bonds, it must, upon well established equitable principles, restore to the complainants what it actually received, or at least so much of what it received as is shown now to be in its possession and in its power to restore."

If such be the theory of the bill, the decree of the court is quite unwarranted by it. The money received by the city from Ballou has long passed out of its possession, and cannot be restored to complainant. Neither the specific money nor any other money is to be found in the safe of the city or anywhere else under its control. And the decree of the court, so far from attempting to restore the specific money, declares that there is due from the City of Litchfield to complainants a sum of money, not that original money, but a sum equal in amount to the bonds and interest on them from the day of their issue. Is this a decree to return the identical money or property received, or is it a decree to pay as on an implied contract the sum received, with interest for its use?

As regards the water works, into which it is said the money

was transmuted; if the theory of counsel is correct, the water works should have been delivered up to plaintiffs as representing their money, as property which they have purchased, and which, since the contract has been declared void, is *their property*, as representing their money. In this view the restoration to complainants of the property which represents their money puts an end to obligations on both sides growing out of the transaction. The complainants, having recovered what was theirs, have no further claim on the city. The latter having discharged its trust by returning what complainant has elected to claim as his own, is no longer liable for the money or any part of it.

But here also the decree departs from what is now asserted to be the principle of the bill. Having decreed an indebtedness where none can exist, and declared that complainant has a *lien* on, not the ownership of, the water works, it directs a sale of the water works for the payment of this debt and the satisfaction of this lien.

If this be a mode of pursuing and reclaiming specific property into which money has been transmuted, it is a new mode. If the theory of appellee's counsel be true, there is no *lien* on the property. There is no debt to be secured by a lien. That theory discards the idea of a debt, and pursues the money into the property, and seeks the property, not as the property of the city to be sold to pay a debt, but as the property of complainant, into which *his* money, not the city's, has been invested, for the reason that there was no debt created by the transaction.

The money received on the bonds having been expended, with other funds raised by taxation, in erecting the water works of the city, to impose the amount thereof as a lien upon these public works would be equally a violation of the constitutional prohibition, as to raise against the city an implied assumpsit for money had and received. The holders of the bonds and agents of the city are *participes criminis* in the act of violating that prohibition, and equity will no more raise a resulting trust in favor of the bondholders than the law will raise an implied assumpsit against a public policy so strongly declared.

But there is a reason why even this cannot be done.

Leaving out of view the question of tracing complainants money into these works, it is very certain that there is other money besides theirs in the same property. The land on which these works are constructed was bought and paid for before the bonds were issued or voted. The streets through which the pipes are laid is public property into which no money of the complainants entered. Much, also, of the expense of construction was paid by taxation or other resources of the city. How much cannot be known with certainty, because, though the officers of the city testify that on the books a separate water-works account was kept, there is no evidence that the funds which went to build these works are traceable by those books to their source in any instance.

If the complainants are after the money they let the city have, they must clearly identify the money, or the fund, or other property which represents that money, in such a manner that it can be reclaimed and delivered without taking other property with it, or injuring other persons or interfering with others' rights.

It is the consciousness that this cannot be done which caused the court and counsel to resort to the idea of a debt and a lien which cannot be sustained. A lien of a person on his own property, which is and has always been his, in favor of himself, is a novelty which only the necessities of this case could suggest.

Another objection to this assertion of a right to the property is, that the bondholders, each of whom must hold a part of whatever equity there is to the property, are numerous and scattered, and the relative amount of the interest of each in this property could hardly be correctly ascertained. The property itself cannot be divided; its value consists in its unity as a system of water works for the city. Without the land and the use of the streets, the value of the remainder of the plant is gone. In these complainants can have no equity.

*The decree of the court is reversed and the case remanded, with directions to dismiss the bill.*

Mr. Justice HARLAN dissented.