The Georgia Railroad and Banking Company *v.* Reid.

1. The special contract for the shipment of the car-load of stock providing that plaintiff could not recover exceeding a certain amount for each mule, evidence of the real value (whatever it might be) of one of them which was injured, was admissible for the purpose of showing that this value was at least equal to the amount specified in the contract.
2. Where, in a special contract in writing between a common carrier and a shipper of live stock, the amount of freight is left blank, the blank may be filled by parol evidence showing the actual amount contracted for and paid by the shipper.
3. The stipulations in the special contract contemplating that the shipper or his agent should accompany the stock while *in transitu*, and containing a provision that, in case of accident or delay, it should be the duty of the shipper, or agent, to feed, water and take care of the stock, the court should have given the request of defendant that, "under this contract, it was the duty of the plaintiff, or one of his agents, to accompany this stock; and if the loss or damage was the result of his not accompanying the stock, then he could not recover."
4. The evidence showing that the shipment of the mules was made on a valid special contract at a reduced rate of freight, and the finding of the jury being upon the basis of general liability irrespective of the special contract, the verdict was contrary to law and the evidence, and the court erred in not granting a new trial.

March 20, 1893. Argued at the last term.

Before Judge Jenkins. Morgan superior court. February term, 1892.

J. B. Cumming, J. A. Billups and Bryan Cumming, for plaintiff in error.

Foster & Butler, *contra*.

Simmons, Justice.

1. Reid sued for the value of a mule which he alleged was injured while being transported on the defendant's

railroad, the injury resulting in its death. He testified that the mule was worth from $150 to $160; and this was objected to and a motion made to rule it out, on the ground that it varied and contradicted the written contract of shipment, which contained a stipulation as to this mule and others shipped at the same time, that in case of damage, the value at the place and date of shipment should govern the settlement, and the amount claimed for a mule should not exceed $125. The overruling of this motion is one of the matters complained of here. This contract, it will be observed, does not fix the value of the mule at the sum stated, but stipulates that the amount claimed shall not exceed that sum. The action being for the value of the mule, proof of value was necessary; and though this contract would preclude the recovery of a value higher than the limit stated, the evidence in question was admissible for the purpose of showing that the value was at least equal to that amount.

2. The bill of lading stated that a reduced rate of freight had been agreed upon, but did not state the amount. After reciting in substance that the "first class" rate was charged on all shipments of live stock except where the owner and shipper agreed to certain stipulations therein set out, it stated that in consideration of the "reduced rate of ——— dollars per car-load," and free passage to the owner or his agent on the train with the stock, these stipulations were agreed to. It has been held that where the written contract of shipment is wholly silent as to freight charges, it is not on that account incomplete, so as to render admissible parol proof of an agreement as to a definite and specific rate. In such case the law implies a stipulation that the rate shall be reasonable and such as is customarily charged for like service under like conditions. It is the same as if the parties had included in the writing

a stipulation that the carrier might charge whatever is lawful and reasonable for the service rendered. (Louisville, etc., R. Co. *v.* Wilson, 119 Ind. 359 ; 4 Lawy. Rep. Annot. 244.) The case is different, however, where the writing is not wholly silent on this point, but shows on its face that the parties, instead of adopting the usual rates which exist in the absence of express contract as to the amount, or leaving the carrier free to charge whatever might be lawful and reasonable under the circumstances, have fixed upon a special rate, lower than the usual rate, and a blank place is left for the amount. In accordance with the rule which allows the introduction of parol evidence to supplement or explain a writing which is incomplete, uncertain and ambiguous, the blank may be filled by showing the amount actually paid or agreed upon. (Code, §§2757(1), 3803.) It was contended, however, that the plaintiff's evidence that he " paid the usual rate they charged everybody " should have been ruled out, because it contradicted the recital that the parties had agreed upon a reduced rate. The object of this evidence was to show that the stipulations on the part of the shipper, which the writing stated were agreed to in consideration of a reduced rate, were in fact without consideration, and therefore not binding upon him, because the rate actually required of him and paid was not a reduced rate; and we think the evidence was admissible for that purpose. See McFadden *v.* Mo. Pac. Ry. Co., 92 Mo. 344, 1 Am. St. Rep. 722, where it was held that " a stipulation in a written contract of shipment placing a limited valuation on the property shipped in case of its loss by the default of the carrier, when not made in consideration of special or reduced rates of shipment, is not binding on the shipper," and " a recital in the written contract that the shipping rate charged was a special and reduced one, is merely *prima facie* evidence of that fact and is open to explanation or contradiction."

3. The charge requested in behalf of the defendant, as set out in the third head-note, was pertinent and proper, and ought to have been given.

4. The evidence failed to sustain the plaintiff in his attack upon the special contract. The sole ground upon which he sought to avoid it was, that no consideration existed for the undertakings on his part therein set out, because the rate of freight actually charged and paid was not a reduced rate, and because he was not given a free pass. By a reduced rate, as explained in the writing itself, was meant a rate lower than the "first class" rate; and the only evidence as to the amount of the first class rate was that of the railroad agent. The plaintiff stated that he "paid the usual rate they charge everybody," but when asked as to the amount, stated that he thought it was $24; and it appeared from the defendant's evidence that this was a reduced rate, and considerably lower than the first class rate, which was $72. The evidence fails to show that the defendant refused to comply with its undertaking to furnish free passage to the plaintiff or his agent. The plaintiff admitted that no application was made for a pass; and neither he nor any agent of his offered to go on the train with the stock. The evidence, therefore, did not warrant the jury in disregarding the special contract and in finding against the defendant upon the basis of general liability irrespective of the contract, as they manifestly did. The contract, as we have seen, limited to $125 the amount the plaintiff could recover as the value of the mule, if the defendant should be liable therefor; but the amount of the verdict was $171.58.

It was argued, however, that we ought to affirm the judgment to the extent at least of the limit of value stated in the contract. We are not authorized to do this, because we cannot say that under the contract the

jury would have found or ought to have found that the plaintiff was entitled to anything at all. By the terms of the contract, the risk of damage to the animals from their injuring themselves or each other, and of all other damage incidental to railroad transportation, not caused by the fraud or gross negligence of the carrier, was assumed by the shipper, and the carrier released from all responsibility therefor. The evidence discloses no negligence on the part of the defendant. It appears that the animals were properly loaded, under the supervision of the shipper, in a car capable of holding several more head of stock than those shipped on that occasion; that the car arrived at its destination on the night it left the point of shipment; that no accident or injury happened to the train or to this particular car; that on arrival at destination, the car was placed upon a side-track, and the conductor, before leaving with the rest of the train, inspected it, and found the animals standing up and apparently in sound condition; and that the car was unloaded at daybreak by the shipper's agent, who found all the animals in good condition, except this mule, whose leg was broken. The cause of the injury was unknown, and it was such an injury as might have resulted from other causes than the fault or negligence of the defendant.

This evidence would have warranted, if it did not require, a verdict in favor of the defendant. *Georgia R. Co.* v. *Spears*, 66 *Ga.* 492; *Central R. Co.* v. *Bryant*, 73 *Ga.* 726. We therefore cannot hold that the error in this case would be cured by a reduction in the amount of the judgment.          *Judgment reversed.*