## CRISP COUNTY, GA., et al. v. S. J. GROVES & SONS CO.

### No. 7304.

Circuit Court of Appeals, Fifth Circuit.
Oct. 31, 1934.

**328**

A. S. Clay, III, of Atlanta, Ga., and W. H. Dorris, of Cordele, Ga., for appellant and cross-appellee.

Walter A. Harris, of Macon, Ga., E. F. Strozier, of Cordele, Ga., and Stan Dillon Donnelly, of St. Paul, Minn., for appellee and cross-appellant.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

There being proper federal jurisdiction, S. J. Groves & Sons Company as transferee of L. E. Meyers Company, filed in the District Court a bill against Crisp county, Ga., and certain individuals who constituted the county's power commission, to assert the right of L. E. Meyers Company, referred to hereafter as the contractor, to recover judgment for a balance due for the construction of a power dam, and to enforce a title or lien against it by virtue of an instrument executed by the power commission to the contractor at the completion of the work. The dam was alleged to be an inseparable part of an electric power plant, and a sale of the whole plant was sought with apportionment of the proceeds, and an account and apportionment of the profits of operation meanwhile was prayed, together with general relief. The petition sought relief which could not be had at law, and the court did not err in entertaining it in equity and in refusing to transfer it to the law docket.

The defenses now important were that about $30,000 of the amount sued for is for extra work done and materials furnished without the written order of the engineer as required by the contract, and allowed at a time when the money available for building the power plant was so depleted as to render the extra cost a debt which the county could not constitutionally create; that some $3,387.20 had already been paid for such extras and should be paid back; and that $36,000 was due the county as damages because of the contractor's failure to complete the work within 365 days as contracted. From an adverse decree on these defenses the county appeals, assigning error as to them and also error in admitting parol evidence touching a blank in the plans which were a part of the written contract, and in decreeing that net receipts from the operation of the plant should, after providing for the interest and sinking fund of the bonds issued against the plant, be applied to the debt adjudged. The complainant takes a cross-appeal, assigning as error the refusal to decree in its favor a title to or lien on the plant itself.

The Constitution of Georgia, art. 7, § 7, par. 1, limits the total debt of a county to 7 per cent. of the assessed value of the taxable property therein, and prohibits any new debt (except a temporary loan to supply a casual deficiency in revenue not in excess of one-fifth of one per cent. of such assessed value), without assent of the people in an election. This paragraph of the Constitution was amended to permit Crisp county, after an election on the question, to issue additionally $1,250,000 of bonds, and with the proceeds to build and equip an electric power plant and to engage in the business of generating and selling electric power, the bonds to be a first lien on the plant and to be paid by preference out of the net receipts from it, but with power to provide by taxation for their payment if the net receipts proved insufficient. The sale of the bonds and the use of the proceeds in constructing, operating, and maintaining the plant were vested in a power commission, who were "authorized and empowered to employ such agents, servants, and employees, and to make and enter into such contracts as are reasonable and proper in the exercise of the duties and powers herein conferred upon said commission. * * * The General Assembly may confer further and additional authority upon the County of Crisp touching the construction, maintenance, control, and disposition of the Hydro-Electric power plant and properties herein provided for not inconsistent herewith." Georgia Laws 1925, p. 72, § 1. The election carried. The power commission was appointed, but no laws conferring additional authority have been passed. The commission on August 6, 1928, made the contract here in question for the construction of the dam, being its first contract, when it had at its disposal the entire proceeds of the bonds. The contract price for all work and material was $776,837.19, subject to additions and deductions provided for in the contract and the plans. In the contract it is agreed that, if in carrying out the work the estimated quantities of material should be exceeded, the contractor should be paid nothing extra, but, if the excess should be caused by any change in the plans, a proper credit should be given him. The commission and its engineer are made the final arbiters of most matters under the plans. Payments were made as the work progressed, and a disagreement between the contractor and the engineer arose as to certain claims for additional materials used and

extra work done. But, after the conclusion of the work, the engineer compromised the dispute, as the court on sufficient evidence found, by allowing about half of the disputed amounts, and issued his final estimate for $153,981.50. This was accepted by the contractor as a settlement, and was formally approved for payment by the commission. They had, however, spent for machinery, land, and in other ways a large amount of the bond proceeds, and also lost a large sum through a bank failure, so that they could pay only part in cash, and executed on August 1st, 1930, an instrument which recited that the county acknowledged that the contractor owned, and was in possession of, an undivided interest in the dam, which the county desired to lease with an option to purchase, and it then purported to lease that interest for three years for quarterly rentals which would equal the balance due, the contractor placing in escrow a deed to all its interests to be delivered on completion of the payments. The payments were not met, and this suit followed.

The dam was built on land of the county, and the building contract reserved no right of possession or other interest in the contractor. No statute gives a contractor any legal lien on public properties. City of Albany v. Lynch, 119 Ga. 491, 46 S. E. 622; Neal-Millard Co. v. Trustees of Chatham Academy, 121 Ga. 208, 48 S. E. 978. The constitutional amendment does not authorize the power commission to sell or incumber the plant. It says that the Legislature may give Crisp county further authority touching among other things the disposition of the plant, but none has yet been given. The commission could not validly acknowledge title out of the county, nor estop it by a purported lease. The contractor in agreeing to improve the county's land credited the proceeds of the bond issue and the good faith of the county, and acquired neither title to, nor lien on, the realty improved. The attempted lease is without legal effect, and there was no error in so decreeing.

On the other hand, the construction contract of August 6, 1928, was within the powers of the commission, and at the time of its making they had available the entire proceeds of the bond issue, so that it created no debt against the county in the sense of the Constitution. Butts County v. Jackson Banking Co., 129 Ga. 801, 60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. Rep. 244. Although by no fault of the contractor a part of the bond money was thereafter used otherwise, and a part lost before the construction was completed, so that there then remained not enough to discharge the payment due, the contract remained a lawful and valid obligation of the county. McCord v. City of Jackson, 135 Ga. 177 (5), 69 S. E. 23; Wilson v. Gaston, 141 Ga. 770, 82 S. E. 136. Included in this obligation were the amounts for extras which were allowed in the final estimate, although at the time of their allowance money was not available to pay them. The duty was on the contractor to do the extra work, which was caused principally by solid rock being found at places not shown in the plans, and not being found where shown and where necessary for the foundation of the dam, and the duty was on the county to pay for it by virtue of the contract if due to a change in the plans. The dam could not have been constructed without it. The question was made as to whether the extra work and materials were the contractor's loss or whether they were due to a change in the plans and to be paid for by the county. The contractor was claiming some $69,000 of extras, and in the end the dispute was compromised by the engineer allowing about $30,000 in the final estimate which was accepted by the contractor and approved by the commission as a settlement. This settlement was not the creation of any new obligation on the county, but the liquidation of the old one, and not different in this respect from a judgment on it, if there had been litigation instead of a compromise. Nor is the point now available that the work had been done without a written order from the engineer, as mentioned in the plans. It was done on oral orders, and the engineer's final written approval of the work by the final estimate was the equivalent of a written order that it be done. Moreover, all contention about it is foreclosed by the compromise.

Likewise is cut off the claim for damages for delay. If there was any offset arising from this cause, it ought to have entered into the final estimate and into the compromise. Compare Grant et al. v. Savannah, etc., R. Co., 51 Ga. 349. By the weight of the evidence, that portion of the plans which stipulated for damages for delay was waived. A blank appears left in it for the amount of stipulated damages. The members of the commission testified that the blank was so left because after discussion with the contractor it was agreed to forego damages. Objection to this testimony was properly overruled. The blank in the writing made a patent ambiguity, and raised naturally the question whether it was left inadvertently and to be supplied by the law's giving a reasonable amount, or whether it was left deliberately to show a failure to agree on that stipulation. The written

contract thus bearing on its face this ambiguity can be made certain by parol evidence explaining the blank. Selph & Daniels v. Williams, 26 Ga. App. 336 (4), 106 S. E. 206; Georgia R. R. & Banking Co. v. Reid, 91 Ga. 377, 17 S. E. 934.

■ The sum decreed the contractor was the amount of the settlement less payments since. It was decreed that the power commission from the receipts of operation of the plant pay maintenance and operating expenses and interest on the bonds, and provide for the sinking fund required by the Constitution, and that thereafter the remaining net receipts should be paid to the county and by it be paid to the complainant on its debt; any other use of the money being enjoined. Though this in effect places a lien on the income, the relief is truly equitable. The county ought not to receive the net income without paying the contractor. The plant and its income are by the constitutional amendment primarily pledged to the payment of principal and interest of the bonds, and the commission is directed, after payment of maintenance and operating expenses and bond interest and a sinking fund reserve, to make enlargements and betterments with the surplus or to pay it over to the county for general purposes. The county has spent or lost the money which should have paid for the dam. It claims that it cannot under the limitations of the Constitution lay a general tax to pay for it (but see Central of Ga. R. Co. v. Wright, 165 Ga. 1, 139 S. E. 890), and that public property cannot be sold by creditors. By its own contentions relatively to this creditor it stands as though insolvent. If the contractor had learned that the bond money was gone and had ceased work, the county would have been compelled to complete the dam in order to have any income from the plant. That the contractor with his own means completed it according to his contract gives him a strong position in equity. While nothing to the prejudice of the bondholders ought to be done, it would be most unjust to permit the county to reap profits from this plant while refusing to pay for an essential part of it. Its operation of it is so far a business enterprise separate from the normal governmental functions of a county and so unnecessary to them that a court of equity may well segregate it and compel the payment of excess net earnings to satisfy its purchase price rather than to enrich the county which has defaulted in its obligation.

The decree in this respect is equitable, and in all respects is affirmed.

*Writ of certiorari denied 55 S. Ct. 352, 79 L. Ed. ——.