## NUVEEN v. BOARD OF PUBLIC IN-STRUCTION OF GADSDEN COUNTY, FLA., et al.[*]

### No. 8253.

Circuit Court of Appeals, Fifth Circuit.

Feb. 16, 1937.

*Writ of certiorari denied 57 S.Ct. 794, 81 L.Ed. —.

176

HOLMES, Circuit Judge, dissenting.

———◆———

H. M. Taylor, of Quincy, Fla., and C. L. Waller and Claude Pepper, both of Tallahassee, Fla., for appellant.

Wm. J. Oven and W. J. Oven, Jr., both of Tallahassee, Fla., for appellees.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

John Nuveen's bill in equity was dismissed on a motion asserting it to be without equity and barred by laches and by a previous election of inconsistent remedies. The District Judge sustained the first two grounds and ignored the last. Having concluded that the bill ought to be entertained, we will deal with all three in order.

The bill presents an unusual situation. In 1907 (Acts Fla.1907, c. 5844) a new legislative charter was granted the city of Quincy, in Gadsden county, Fla., which expressly authorized it to issue bonds for the purpose of erecting a schoolhouse and maintaining a system of public education. An election was held in 1909 which authorized such bonds. At that time there was no statute for the validation of bonds, and to quiet some question the Legislature on May 10, 1909, made a special act (Acts Fla.1909, c. 6095) that the bonds "be and the same are, hereby declared legal and valid, * * * and all the defects or other irregularities in such proceedings * * * are hereby cured and the issuing and sale of said bonds as provided for by said ordinance, are hereby authorized and permitted." Among the bonds provided for by the ordinance were included, "for the purpose of erecting a school-house and maintaining a system of public education in said city $10,000." Nuveen in good faith bought this $10,000 of bonds for a little less than par in October, 1909. We shall speak of his payment as $10,000. The bonds were negotiable, and contained the usual recitals of legality. Meanwhile, on August 21, 1909, the city of Quincy had entered into a contract with the Board of Public Instruction of Gadsden county, whereby the former leased to the latter for fifty years a described lot owned by the city, the board agreeing to pay $8,000 in installments toward the erection thereon of a school building to cost not less than $17,-000, which the city agreed to build at once. The board covenanted to keep the building in repair and insured, and to run a public high school in it for the period of the lease, the lease to be forfeited on failure to run the school for two years. The city put the money got from Nuveen and that supplied by the board into a separate fund and used all of it to erect the building, which still stands in good repair. The city paid the interest on Nuveen's bonds until January 1, 1914. In 1911 the Supreme Court of Florida in Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716, held that while the Florida

Constitution authorized the Legislature to incorporate municipalities and to prescribe their jurisdiction and powers, in view of other provisions about a uniform system of free schools, a city could not issue bonds to erect a schoolhouse and maintain a system of public education in the municipality, and it enjoined the issue of such bonds. A taxpayer of the city of Quincy in turn sought and obtained an injunction against the collection of further taxes to pay these school bonds, final judgment being given in 1916. Munroe, City Treasurer, v. Reeves, 71 Fla. 612, 71 So. 922. The Board of Public Instruction of Gadsden county then called an election to authorize it to issue $12,000 of bonds "for acquiring, erecting and furnishing present school building and grounds, and for purchase, redemption and cancellation of present bonded obligation standing against present school building, etc." The vote was more than three to one to issue the new bonds. On a validation proceeding, then authorized by statute, it was objected that the school district could not properly make restitution to Nuveen for the city, especially as the city's bonds had been declared void. Validation was refused. On May 3, 1920, the city officials met with the Board of County Commissioners and the Board of Public Instruction of Gadsden county and they adopted a joint resolution reciting the history of this matter, that the community had a burden both legal and moral to pay the bonds, since the proceeds were in good faith used by the community, and that they favored an election for the issuance by the school district of $17,500 of bonds to buy the school building from the city and to enable the city to pay its old bonds. The Legislature in 1921 passed a special act (Sp.Acts Fla.1921, c. 9057) authorizing the city "to restore and repay the consideration" of the bonds, and especially empowering it "to make such repayment from the proceeds of any sale it may make of the school property acquired in part by the proceeds of the said bonds." At about this same time, however, a new contract of lease was made between the city and the board which extended the term to eighty-eight years and added to the burdens of the board as lessee the assessments for constructing and paving some adjacent sidewalks and streets. The proposed bond election was duly called and held July 25, 1922, and resulted in a tie vote. In another election in August following a majority voted against the bonds. Nuveen knew of these efforts to pay him, and had delayed

178

to take any legal action at the request both of the city and the public school officials. On January 25, 1923, he filed a petition for mandamus to require the city to levy taxes to pay him, esteeming that since he had not been a party to previous litigation his rights as a bondholder were not controlled thereby. The Supreme Court gave final judgment against him on December 20, 1924, State ex rel. Nuveen v. Greer, 88 Fla. 249, 102 So. 739, 742, 37 A.L.R. 1298. The court, however, said: "Here the bonds are invalid, and there is no duty to pay the bonds. But there would be a legal duty to pay a judgment duly obtained for the return of the money with appropriate interest, that was received and used by the municipality. * * * Chapter 9057, Sp.Acts of 1921, appears to be designed to authorize the municipality, notwithstanding the lapse of time, to return with interest thereon the money received by the city for the bonds in question, though there appears to be a clerical error in the date of the bonds named in the act." Encouraged by the quoted remarks, Nuveen promptly sued the city for the return of his money. The city pleaded the statute of limitations. After delays whose cause does not appear, the Supreme Court finally upheld that defense July 26, 1934. Nuveen & Co. v. City of Quincy, 115 Fla. 510, 156 So. 153. The following December the present bill in equity was filed against the city and the board and the trustees of the school district. Thus detailing the facts, the bill prayed that the city be decreed a trustee of the school building as to the proportion of its value due to the investment of Nuveen's money in it, the lot being alleged to be of the value of $2,000, Nuveen's contribution $10,000, and the board's $8,000; that an account be taken of the fair rentals due to Nuveen for its use; that necessary deeds be made to Nuveen to express his interest in the property; that a partition be made by sale if necessary; and in the alternative that Nuveen's contribution be charged as a lien on the building and that it be sold to pay the lien if not otherwise discharged; and there was a prayer for general relief.

■ Putting aside for the present the questions of laches and election of remedies, and considering the transaction as recent, we are of opinion that there is equity in the bill. The respondent appellees are all creatures of the Florida Legislature whose rights and duties as public corporations are largely in legislative control. The Legislature joined with the city in holding out the bonds as good and valid before they were sold, and in 1921 joined the city and the board in recognizing the right of Nuveen to his money and the justice of recognizing in him some claim in and to the building, and of selling it to pay him. We accept the decisions of the Supreme Court that the city had no power and the Legislature could give it none to have a school building, and that no valid debt to be paid by city taxation could be created to build one, the issued bonds being mere nullities. That being true, the money paid to the city officers for that purpose was never the money of the city but remained the money of Nuveen. If the city had kept it or had used it for some proper municipal purpose, Nuveen could have recovered it at law. But the city officers did not put it to any proper municipal use but put it into this building along with other money contributed by the board. Thereafter the city could not be held liable to repay it, because if its officers could not make the express promise in the bonds they could not raise a valid implied promise to pay by using the money for this same improper purpose. Cities cannot so easily evade the constitutional limits of their power. For this reason, independently of the plea of limitation on which Nuveen was defeated in his effort to hold the city as for money had and received to his use, he must have failed on the merits of his claim so soon as it appeared that the city no longer held his money and had not used it for a proper municipal purpose but had applied it to this unauthorized use. City of Litchfield v. Ballou, 114 U.S. 190, 5 S.Ct. 820, 29 L.Ed. 132. Nuveen's true right and his only effective remedy was, recognizing the invalidity of his bond contract and abandoning any effort to hold the city to repay his money as a debt, to follow it into its investment in this building. Equity by treating the money as a trust will assist him in so doing. There would be little difficulty if the city with his money alone had bought the lot and building. The difficulty comes because the city previously and we suppose rightfully owned the lot, and because the Board of Public Instruction contributed $8,000. But there happens to be no doubt that all of Nuveen's money went into the building, and that his money and the $8,000 from the board produced the building without being commingled with any tax raised money of the city. The city contributed only the lot. It is abundantly clear that the city, the board, and Nuveen

all acted in good faith, believing that what was done was valid. There was no purpose to mislead or deceive on the city's part, if indeed its misrepresentations of law could be deceit. All having been honestly mistaken, there is no reason why one should lose its contribution rather than the others. The indivisible thing that was produced ought equitably to be shared in proportion to their several contributions toward it. The equity of the situation is no different from what it would have been if they had paid $2,000, $10,000, and $8,000 to buy the lot and schoolhouse ready built, putting the title into the city for a use that failed. Equity will declare a constructive trust in proportion to the contributions of purchase money. On the statements of the bill Nuveen equitably owns a one-half interest in the house and the ground on which it stands.

■ He is not entitled to charge his contribution to the building as a lien and to have the building sold to satisfy it. When an individual has wrongfully mingled another's funds with his own, a lien may be a proper remedy, but to grant it here would give Nuveen a priority over these public bodies who only shared in a general mistake, and through a sale they might lose their investments. It would be in substance to give Nuveen a secured claim affecting the city in a way too nearly like the establishment of a debt against it. Equity will not give a lien against public property when the law prohibits a debt. City of Litchfield v. Ballou, supra. Some of the cases deny not only a lien but any relief, but they will be found to involve either a positive prohibition of law making a case of par delictum or an inextricable commingling with tax money of the municipality, neither of which circumstances obtains here.

■■ The leases between the city and the board ought not to control the equities of the parties. According to them, the board paid its $8,000 for the use of the building during the lease, the board claiming no further interest in it. But these leases were not authorized by Nuveen and bring in no income to him. They ought not to bind him. Indeed they are part and parcel of the city's ultra vires effort to own a school building. If the city is not able to tax to build it, it certainly should not be able to take a stranger's money for that use, keeping both the money and the building. The leases being set aside, the board ought to be remitted to its equity of sharing with Nuveen and the city; leaving the way clear for

such adjustments among themselves as equitable co-owners, whether by way of sale or rental, as may be within their several powers. The city apparently has power under the special act of 1921 to sell the property, or certainly its interest in it, to settle this controversy. A court of equity after decreeing the interests of the several parties can order a sale for partition, but should do so only after a reasonable opportunity for the parties so to adjust their rights as to avoid embarrassment to the public school.

Our conclusion that there is general equity in the bill is not without support in the authorities. Some of them are collected and commented on in Shaw v. Board of Education, 38 N.M. 298, 31 P.(2d) 993, where a similar relief under like circumstances was granted. A special relief touching a public construction adapted to the circumstances was upheld by this court recently in Crisp County v. S. J. Groves & Sons, 73 F.(2d) 327, 96 A.L.R. 391.

■ We do not think that Nuveen is chargeable with such laches as ought to defeat him. The Florida limitation statutes refer to actions at law. There is in equity no limitation statute, but only the doctrine of laches. Hayes v. Belleaire Development Co., 120 Fla. 326, 162 So. 698. Legal limitations are, of course, applied in equity to rights which are legal or which optionally might have been asserted in a law court. Webb v. Powell (C.C.A.) 87 F.(2d) 983. But in a case of pure equity laches is not a mere matter of lapse of time, but requires a consideration of the relations of the parties and the circumstances of the case. It is that delay and neglect which renders it difficult or dangerous to make inquiry or inequitable to permit relief. Oliver v. Piatt, 3 How. 333, 11 L.Ed. 622; Tampa Water Works v. Wood, 104 Fla. 306, 139 So. 800; Fort Pierce Bank & Trust Co. v. Sewall, 113 Fla. 811, 152 So. 617. In this case the time has been long, but there has been neither quiescence nor acquiescence on Nuveen's part. No one suspected the invalidity of the bonds until 1914. In 1916 at the suit of a taxpayer the Supreme Court of Florida held them invalid. But Nuveen was encouraged by the city and the board to believe his rights would be protected, and was requested to defer action. The plan of having the board, which could own a school building, to buy it seemed practicable and was encouraged by the special act of 1921 authorizing the city to sell the property and pay Nuveen. But the electorate voted

against it. Nuveen thinking that by reason of the contract clause of the Federal Constitution the decision in the taxpayer's suit would not prevail against him litigated this question disastrously. As we now know, he should then have filed the present bill but, misled by expressions of the Florida court, he sought a remedy by a suit on an implied promise to repay him his money. The only delay that is subject to criticism and not explained is the long pendency of that suit. But with a suit in court Nuveen can hardly be said to be asleep. No third party has become involved, no loss of evidence or doubtfulness of the truth has arisen. The same parties with the same rights in this building persist, all fully aware of the entire facts and not disputing them. Equity will not consider as laches a delay due to a bona fide effort to assert a right at law the failure of which really established the right to go into equity. Williams v. Neely (C. C.A.) 134 F. 1, 69 L.R.A. 232; Southern Pac. Co. v. Bogert, 250 U.S. 483, 484, 39 S. Ct. 533, 63 L.Ed. 1009. If Nuveen could have gotten his money back from the city, he should not be allowed in equity to take the public school building.

■ It is also urged that the statutory limitation on suits to recover real estate ought to be applied. We think no title should accrue that way to the city or the board, nor their possession be so defended. The board has never claimed possession except as the tenant of the city, bound to use the property for school purposes only. The city has successfully asserted that it has no right to have a school or a school house. How can it get rights by such a possession forbidden to it by law? Both the city and the board by solemn joint resolution in 1920 elaborately set forth the rights of Nuveen in this building, urging new bonds to pay the old ones "that the claims and obligations because thereof standing against the present school building, furniture. and grounds shall be fully and promptly paid and satisfied." The city since 1924 has consistently resisted being made to pay Nuveen any money, but the record does not show that either it or the board ever denied his having a right in the building until the present bill was answered.

■ Nevertheless, lapse of time ought to count against Nuveen's claim for an account of past use and occupation. His allowing this claim to accumulate for so long a period without any insistence on payment would put a serious and unjust burden on

the board, which had other arrangements for the use of the building and had no part in the original dealings with Nuveen. And the use for a school forbidden to the city ought not to be made the basis of a burden on it, certainly not beyond its interest in this property which the Legislature seems to have made salable for the adjustment of this whole matter. In making this account, the court should consider whether ordinary periods of limitation ought not to apply, or some relieving principle of equity. This particular question not having been argued before us, we will not more definitely decide it.

■ Lastly, there has been no such election by Nuveen as should destroy his equitable right. There is much learning in the books about the election of remedies which precludes a second choice. Some of it is of a piece with the choice which was once forced on a litigant between demurring and pleading: if he mistook the law, he lost his right to try the facts. An election of remedies may be spoken of when the true right of the litigant is plain and he is making a choice of paths to reach it; but what is most frequently called an election of remedies is really an election or choice of rights, language becoming confused by the ancient practice in the law of testing all rights by the forms of remedy. The doctrine of election has been said not to be a favorite of equity, Friederichsen v. Renard, 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075, and it should not be when it sacrifices the true right to a mistake. In the cited case the plaintiff sought to rescind a contract for fraud, but was found to have so altered the property involved that he had no right to rescind, but he was allowed in the same suit to enforce the contract by recovering damages for the fraud. In Henderson Tire & Rubber Co. v. Gregory (C.C.A.) 16 F.(2d) 589, 49 A.L.R. 1503, the question was whether an unsuccessful suit to reform a contract barred one to recover damages for breach of it, the answer being no. It seems to us that there was no great room for argument, but a good discussion and citation of authorities was made. Robb v. Vos, 155 U. S. 13, 15 S.Ct. 4, 39 L.Ed. 52, held that where an unauthorized person assumed to act for another, and the other knowing the facts sued to enforce rights under the unauthorized act, he ratified it and could not afterwards repudiate it. The same result would have followed any other form of unequivocal ratification, but if the principal

had at first resisted the contract as unauthorized and had lost on that issue, we see no reason why he could not afterward assert any right the contract gave him. A choice between rights is often presented with varying results as to finality. Thus if property be converted by a sale to a third person the owner may sue the buyer for his property, or the seller for the conversion, or may waive the tort and sue the seller for the price received. If he does the last, he can never do either of the former, but if he sues the buyer for the property and is defeated on some ground other than his want of title, he ought to have his remedy against the seller. So in case of a transaction claimed to be voidable for fraud, if the person defrauded with knowledge affirms the contract either by suing on it or otherwise, he cannot afterwards repudiate it; but if he is defeated in his contention of fraud, the contract being held good, it would be unreasonable to hold that he cannot enforce it in the same suit or in some other suit if estoppel by judgment does not prevent. Yet again, if the beneficiary of a trust conceives that the trustee has made a wrong use of the fund, he may follow the fund or he may hold the trustee for a devastavit. To do the former would in some circumstances be a waiver of any right against the trustee; but if the trustee were sued and should prove that it was no devastavit but a proper investment the beneficiary would not lose his right to the investment; and if he first elected to follow the fund but failed because of a defense of bona fide purchaser, should he be defeated in a subsequent effort to charge the trustee? The only case we find in which the federal Supreme Court seems to have cut off a substantial right by applying a so-called election of remedies is United States v. Oregon Lumber Co., 260 U.S. 290, 43 S. Ct. 100, 67 L.Ed. 261. We understand and appreciate more readily what is said on that subject in the dissenting than in the majority opinion. We believe the case should rest properly on the idea that the previous judgment estopped against the reassertion of the very same acts of fraud. In the case before us Nuveen thought he had a right to recover money from the city, and tried out two causes of action of that sort. He had no such right. But the city's success in maintaining that it could not borrow his money established that the money had not ceased to be his own. It is the very basis of his right in equity to follow it into the building which it helped to produce. He has

made a long and costly search for a true remedy, but he has made no choice which the city ought to be heard to say has lost him his true right. The judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.

HOLMES, Circuit Judge, (dissenting).

Aside from the defenses of laches, limitations, election of remedies, and no lien where there is no debt, I think there was a failure to trace the money of appellant into the school building until it had become so intermingled with the property of others as to render identification impossible and effort at restoration inequitable. The city owned the lot before the bond issue; the county contributed $8,000. The Supreme Court of Florida has held that the bonds are void because issued in violation of the Constitution of the state. It has further held that the debt is barred by the statute of limitations.

The taxpayers and patrons of the school district are the ones who will suffer if the city loses its lot and the county its money. They are the beneficiaries intended to be protected by state constitutional provisions restricting the borrowing powers of cities. We must enforce the Constitution of the state as construed by its court of last resort, provided it does not contravene any provision of the Federal Constitution. That the bond issue was void and the debt is barred have been finally adjudicated. It is equally certain that there can be no lien without a debt and no trust without a res. The res must be identifiable and in a form susceptible of reclamation without impairing the rights of others. The effect of the opinion of the court is to make appellant a tenant in common of the school property, but it draws back from the logic of the decision and denies any return thereon for over twenty years. The county board holds the property under an eighty-eight-year lease.

This case is different from Chapman v. Board of County Com'rs of Douglas County, 107 U.S. 348, 2 S.Ct. 62, 27 L.Ed. 378, in which the res was traceable directly into the possession of the county, and was easily identified, being land which it acquired by deed from the plaintiff. Furthermore, the county was authorized to acquire the land and its contract was held illegal solely because it undertook to pay for the same in an unauthorized manner. In the case at bar, the city of Quincy had and has no pow-

er to expend money for the purpose of public education. Munroe v. Reeves, 71 Fla. 612, 71 So. 922; State ex rel. Nuveen v. Greer, 88 Fla. 249, 102 So. 739, 37 A.L.R. 1298.

This case is apposite to City of Litchfield v. Ballou, 114 U.S. 190, 5 S.Ct. 820, 822, 29 L.Ed. 132, in which funds acquired by a bond issue, void because in excess of a constitutional limitation on indebtedness, had been used in the erection of a water works plant on lands already owned by the city. The court held that inasmuch as the city was not liable on its express contract, as evidenced by the bonds, it could not be held liable for the same debt on an implied contract; that the constitutional inhibition was as "binding in a court of chancery as a court of law"; that "equity will no more raise a resulting trust in favor of the bondholders than the law will raise an implied assumpsit against a public policy so strongly declared." Continuing, the court said:

"If the complainants are after the money they let the city have, they must clearly identify the money or the fund, or other property which represents that money, in such a manner that it can be reclaimed and delivered without taking other property with it, or injuring other persons or interfering with others' rights."

Finally, when the appellant here was before the Supreme Court of Florida in Nuveen v. City of Quincy, 115 Fla. 510, 156 So. 153, 158, that court said:

"In this case there was no authorized purchase of property or sale of bonds by the city and no misapplication of the funds of the plaintiff. There was an intentional purchase of city bonds, the possible inherent or latent constitutional or fundamental infirmities of which bonds were in law conclusively presumed to be known to all parties, the bonds not having been adjudged to be valid under the Constitution; and the subsequent adjudication of their illegality does not operate to raise a trust out of the transaction in favor of the party who has paid for the bonds he intended to buy, when the city cannot pay the bonds because forbidden to do so by the paramount law. * * *

"The consideration that should the bonds be adjudged to be illegal and void, the city may legally return the money it received for the bonds and used for a city purpose, does not create a trust against the city and in favor of those who bought city bonds which were issued and bought in good faith, but which in law are legally unauthorized and void because issued in violation of the Constitution, though the illegality was not known until the validity of the bonds was duly put in issue and adjudicated; all parties being in law held to know that an adjudication of an issue of validity or invalidity is a legal condition on which all municipal bonds are issued."

I think the decision of the District Court should be affirmed.