**OKEECHOBEE COUNTY, FLA., v. NUVEEN et al.**

**NUVEEN et al. v. OKEECHOBEE COUNTY, FLA.**

**No. 11091.**

Circuit Court of Appeals, Fifth Circuit.

Nov. 18, 1944.

Rehearing Denied Dec. 19, 1944.

T. W. Conely, Jr., of Okeechobee, Fla., Manley P. Caldwell, of West Palm Beach, Fla., and Joseph P. Lea, Jr., of Orlando, Fla., for appellant Okeechobee County, Fla.

Miller Walton and Edwin L. Hubbard, both of Miami, Fla., for appellees.

Before HUTCHESON, HOLMES, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

Alleging that they had deposited [1] with the County certified checks to guarantee performance of contracts with respect to refunding bonds, and that they were entitled to have them back, plaintiffs sued for their return, or, if they had been cashed, for their face amount with interest from demand. The claim was that though the contracts had become impossible of performance through no fault of theirs, the county was holding on to, and claiming as its own, the checks or their proceeds. There was no denial that the deposits had been made. The defenses were that they could not be recovered (1) because the con-

[1] There were two checks deposited, one for $10,000 and one for $1,000. The $10,000 check was put up to guarantee performance within the time fixed of an agreement to assist defendants in their refunding road and paving bonds, and it was provided that the checks were to be forfeited as liquidated damages or returned to plaintiffs as provided in the agreement. The contract provided: That in order to assist the board in assuring the accomplishment of large savings as promptly as possible, plaintiffs offered to perform the following services in connection with the refunding:

(A) At their expense retain the services of bond attorneys to assist the attorney for the board.

(B) To pay the cost of the approving legal opinion of validation proceedings, printing of bonds, reasonable fee of attorney for the board, and all other necessary expenses, all such items of expense to be approved by the Board and the proposers.

(C) was a provision that the new refunding bonds should constitute a continuation, extension and merger of the refunded indebtedness.

(D) provided that plaintiffs would use their best efforts in assisting the board to effect the refunding of said indebtedness and undertake all acts which they might legally perform in this connection, but such assistance should in no manner constitute the managing or controlling of the official functions of the Board in refunding said indebtedness or in the issuance of the bonds refunding such indebtedness, it being expressly understood that the Board reserved the right to fully exercise its official discretion and to freely perform its official duties in all matters concerning the issuance, exchange, sale and delivery of said Refunding Bonds, or other duties in connection with said Refunding Bonds.

(E) promised to prepare data about the bonds for the information of persons interested in bidding on them.

(F) stated that the board should be advised to hold public sale for all of the bonds which have not been exchanged, and At the time of such advice, we will tender to the Board a written guarantee to bid a price of 103 and accrued interest at such public sale for all of said new Refunding Bonds to be sold.

(G) was a provision for accelerating delivery if necessary.

(H) was an agreement of the board that it would cooperate with plaintiffs.

(I) provided, "Our guarantee to bid for said new Refunding Bonds, and the exchange of bonds as provided hereinafter, shall be subject * * * and that at the time of the delivery of said New Refunding bonds the United States of America is not involved in war."

(J) obligated the board to consider no bid less than plaintiffs' proposed guarantee, and provided for a fee for bonds sold.

(K) made plaintiffs the agent to secure agreements for the exchange of the bonds but without fee or charge to the board.

(L) declared that if the new refunding bonds were not issued as sold the board would not be liable for fees or expenses.

(M) fixed the continuance of the agreement for one year or such later date as might be mutually agreed on.

The $1,000 check was put up at the same time under a covering letter which declared that it was deposited as a guarantee to indemnify against any suits brought because of the making of the contract, the check to be returned unless defendants defaulted in the contract it was put up to secure, in which event it was to be taken by the county as liquidated damages.

tracts were illegal and against public policy, (a) in that they undertook to delegate, to plaintiffs, official functions of the county, (b) in that they sought to, and did, interfere with the course of justice in that they sought to circumvent and prevent the enforcement of the judgment of the bankruptcy court; and (2) if the contracts were valid, they had not been performed in accordance with their terms but had been breached, and the deposits then had become the property of the county.

There was a trial to the court without a jury, and the establishment of the facts on which he rested his judgment. The county had petitioned for a composition of its indebtedness under the Municipal Bankruptcy Act, 11 U.S.C.A. § 301 et seq., and an interlocutory decree had been entered March 3, 1931. Certain creditors had appealed, but there was no supersedeas. During the pendency of the appeal, plaintiffs and the county entered into the contract in connection with which the deposits sued for herein were made. On November 25, 1941, the bankruptcy court enjoined the county from going forward with the contract, and this injunction prevented further action under it until the appeal from the interlocutory decree of March 3, 1941, was, on June 2, 1942, decided, when the court vacated the injunctive order of November 25, 1941. After the injunction was dissolved, the county demanded that plaintiffs go on with its contract. Plaintiffs, pointing out that the United States was at war, advised the county that it could not proceed with the contract and that in addition there would not be time enough to complete it within the year it fixed. They agreed, however, to do such things as they could do, but insisted that they be paid the compensation provided for if they did those things. The county insisted upon full performance of the terms of the contract, and plaintiffs declining for the reasons given to do so, the county claimed forfeiture of the funds as liquidated damages. For a time after their deposit, the county had held the checks uncashed. It had then cashed them, but the proceeds were kept intact by the county until after the period of the year during which the contract was to be performed.

The District Judge, of the opinion that the plaintiffs were entitled to recover, whether the contract was or was not illegal and contrary to public policy, made no ruling on the contention that the contract was void as an attempted delegation of the duties and powers of the county, under Taylor v. Williams, 142 Fla. 402, 195 So. 175, Bradford County, Fla. v. Nuveen, 5 Cir., 133 F.2d 169, and related cases. On the point that the performance of the contract would have interfered with the course of justice, the court agreed with the county's contention, but was of the opinion that this did not prevent the recovery of the deposited funds. On its third position that the contract had not become impossible of performance, the District Judge disagreed with the county. He thought, on the authority of Moller v. Herring, 5 Cir., 255 F. 670, 3 A.L.R. 624, that the injunction against the county had made performance impossible, and that when the injunction was finally dissolved, the conditions were such as to excuse plaintiffs from performance. He, therefore, found for plaintiffs for the recovery of the sums deposited. On plaintiffs' claim that they were entitled to interest, finding that no benefits had accrued to the county from the use of the funds, and there was no provision in the deposit for the payment of interest, he thought, on the authority of Brownell v. City of St. Petersburg, 5 Cir., 128 F.2d 721, and Wright v. Adkins, 152 Fla. 512, 12 So.2d 296, that interest should be denied.

The county has appealed from the judgment awarding recovery of the sums deposited, plaintiffs from the judgment denying them interest.

The county urges with vigor that the refunding contract was illegal and void as undertaking to delegate to private persons the public duties and obligations of the county, and that plaintiffs may not, therefore, invoke the aid of the court to recover moneys deposited, to guarantee its performance, and to indemnify the county against suits on account of its making. We cannot agree. Plaintiffs, in order to recover, do not need to invoke or rely upon the contract. Neither is this a case where an illegal contract has been performed by one party, and the other party is endeavoring to obtain benefits from that performance. If we could agree with defendant that the contract was illegal, we should have to hold that the deposits were on familiar principles, recoverable in the form of action chosen here. Where money has been furnished for an illegal purpose but it has not been used in fulfillment of that purpose, it may be recovered back. In such an action

all that the plaintiff has to prove in order to recover is that the person sued has money of plaintiffs which he is not in equity and good conscience entitled to retain, and refuses to turn it over to him. 4 Am.Jur. § 28, p. 519.[2] If, therefore, appellant were right in its view that the contracts were illegal and for that reason could not be performed, this would advantage not appellant but appellees. For, the contract being illegal could not be complied with, failure to comply with it could not be chargeable to plaintiffs, in equity and good conscience, defendant would not be permitted to unjustly enrich itself, and plaintiffs would be entitled to have their money returned. Contracts, Restatement, § 605; 6 Williston on Contracts, § 1788; Nuveen v. Board of Public Instruction of Gadsden County, 5 Cir., 88 F.2d 175. We do not, however, agree with the county that the contract was illegal. The contract fails to contain the objectionable provisions of the contracts in the cases appellant invokes. In addition, by express provision,[3] it removes therefrom the vice condemned, and thus prevents the operation of the principle laid down in Taylor v. Williams and Bradford v. Nuveen, supra, and in State v. City of Fort Myers, 145 Fla. 135, 198 So. 814. It remains only to determine whether plaintiffs have shown that they did not default in the performance of the contract and are, therefore, entitled to the return of the deposited money. We think they have. Of the many provisions in the contract, two of the most important were, (1) that plaintiffs guaranteed to bid on the new refunding bonds a price of 103 and interest, and (2) "that the Board shall not consider any bid for less than our guarantee". Qualifying the provision for a guaranteed bid was Provision I, which, among other things, provided: "Our guarantee to bid for said new refunding bonds shall be subject to * * * and that at the time of the delivery of said new refunding bonds the United States of America is not involved in war."

▮ Through no fault of plaintiffs but because of an injunction preventing the county from going on with the refunding contract,[4] the county and plaintiffs were not able to bring the contract to completion until after the United States had become involved in war. When then the injunction was dissolved many months afterwards, plaintiffs were unwilling to comply, and defendant was not in a position to demand compliance, with the important terms of the contract that plaintiffs advertise a public sale and at that sale bid for the bonds a price of 103 and interest. The contract having thus become impossible of performance without fault on plaintiffs' part, plaintiffs became ex aequo et bono, entitled to a return of the deposited funds, and the judgment ordering their return was right. On the cross-appeal, we think it clear that the District Judge was right in denying interest, upon the authorities cited and for the reasons given. Normally interest follows the recovery of money due as matter of law. Where, as here, however, the action is for money had and received, an action in form legal but in its basis equitable,[5] and to prevent unjust enrichment

---

[2] Cf. Singleton v. Benton, 114 Ga. 548, 40 S.E. 811, 58 L.R.A. 181; First State Bank of Fort Meade v. Singletary, 124 Fla. 770, 169 So. 407; Moss v. Condict, Fla., 16 So.2d 921 and annotation, 93 A.L.R. 441.

[3] It provides that all items of expense to be incurred by Nuveen shall be approved by the county and that Nuveen shall "undertake all acts which" it "may lawfully perform * * *, but such assistance shall in no manner constitute the management or controlling of the official functions of the Board in refunding said indebtedness or in the issuance of the bonds refunding such indebtedness, it being expressly understood that the Board reserves the right to fully exercise its official discretion and to freely perform its official duties in all matters concerning the issuance, exchange, sale and delivery of said Refunding Bonds, or other duties in connection with said Refunding Bonds".

[4] Moller v. Herring, 5 Cir., 255 F. 670, 3 A.L.R. 624.

[5] "The action for money had and received was invented by the common law judges to secure relief from the narrower restrictions over the common law procedure which afforded no remedy in too many cases of merit. * * * Though an action at law, it is equitable in its nature * * *. The action is liberal in form and greatly favored by the courts. It aims at the abstract justice of the case and is less restricted and fettered by technical rules and formalities than any other form of action. * * *". It is "founded upon the principle that no one ought unjustly to enrich himself at the expense of another, and it is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and, ex aequo et bono, it belongs to another." 4 Am.Jur. § 20, pp. 508, 509.

the money ought, ex aequo et bono, to be returned, there is a discretion to refuse interest. Here no payment of interest on the deposit was contemplated, and the court found that the county had not benefited by the use of the money. The discretion to deny interest was not abused. It was properly exercised and should be sustained. The judgment as to both direct and cross appeal is affirmed.

HOLMES, Circuit Judge (dissenting in part).

I think the appellees breached their contract and the fund became the property of the county. Therefore, I dissent on the direct appeal but concur on the cross appeal.