NEWBERRY v. NINE MILE-HALFWAY DRAIN DISTRICT.

1. COURTS—LAW OF THE CASE—STARE DECISIS.
   Where law of the instant case as to validity of proceeding to establish a drain was correctly stated in previous Federal and State cases involving same invalid drain district, decisions therein are followed.

2. EQUITY—MOTION TO DISMISS—ALLEGATIONS TAKEN AS TRUE.
   On motion to dismiss a bill of complaint, well pleaded allegations must be taken as true.

3. SAME—LACHES.
   Where so-called drain, in fact a sewer, was declared illegal in 1932, and plaintiff bondholders waited until December, 1942, to file bill of complaint to have provision made for at least part payment of their bonds from revenues from users of new and larger system which included a substantial part of the original project, plaintiffs held, guilty of laches in view of the appearance of various new interests.

Unjust enrichment as basis for constructive trust, see Restatement, Restitution, § 160.

4. DRAINS—BONDS—PAYMENT—ILLEGAL DISTRICTS—REVENUES.

Where drain was constructed pursuant to proceedings not held invalid until after some property holders in district had paid some assessments, county could not thereafter be required to pay bondholders from revenues received from larger project which included much of the construction that had been illegally made either by way of grant or by bonds to be redeemed from revenues to be collected from users.

5. SAME—BONDS—CONSTRUCTIVE TRUST—UNJUST ENRICHMENT.

Where so-called drain, in reality a sewer, was constructed illegally and bondholders whose funds were used in the project were only repaid in part before determination of illegality was made, constructive trust may not be imposed upon the project generally on the ground of fraud, unjust enrichment, the right of restitution, restitution or equity, although where some property acquired for the original project may be shown to have been abandoned as a part thereof and the bondholders' funds are traceable thereto, case is remanded for taking of proofs to determine whether or not a constructive trust should be imposed as to such portion.

6. COSTS—CLASS SUIT—BONDHOLDERS OF ILLEGAL DRAIN DISTRICT.

No costs are allowed in class suit by bondholders to collect whole or part of unpaid balance from successor user of substantial portion of sewer project, illegally constructed under drain law.

Appeal from Macomb; Golden (Clayton C.), J. presiding. Submitted October 7, 1947. (Docket No. 11, Calendar No. 43,783.) Decided January 5, 1948. Rehearing denied February 16, 1948.

Bill by Truman H. Newberry, executor of the estate of John S. Newberry, deceased, and others against Nine Mile-Halfway Drain District, a public quasi corporation, and others to impress a trust upon a sewerage system. Bill dismissed. Edith S. Newberry and others were substituted as parties plaintiff. Plaintiffs appeal. Modified, affirmed and remanded.

*Voorhies, Long, Ryan & McNair, Joslyn, Joslyn & Joslyn* and *Miller, Canfield, Paddock & Stone,* for plaintiffs.

*Alex J. Groesbeck, Hugh Francis* and *Bernard F. Powell,* for defendant Nine Mile-Halfway Drain District and others.

*Charles A. Retzlaff,* for defendant City of Centerline and others.

*John H. Yoe,* for defendant Township of Lake and others.

*Edward A. Jacob,* for defendant Board of County Road Commissioners.

*Howard R. Carroll,* for defendant Wojt.

*Hill, Essery, Lewis & Andrews,* for Kansas City Life Insurance Company, *amicus curiae* on appellants' motion for rehearing.

BUTZEL, J. In an amended bill of complaint filed in the Macomb county circuit court in chancery, plaintiffs allege that they are respectively the holders in due course of 234 bonds of the par value of $1,000 each, dated June 1, 1926, issued by defendant Nine Mile-Halfway Drain District, a public quasi corporation. The maturity dates of the bonds, issued in serial form, are not disclosed, but the sample bond attached to the amended bill of complaint became due May 1, 1934. A large part of the bonds of the same issue had already been paid prior to that time. While there is some indication that all unpaid bonds became due long before the filing of the bill of complaint, the defense of the statute of limitations is not raised.

Plaintiffs represent that this is a class suit brought on behalf of themselves, as well as some 200 other owners of similar bonds, but whose names are unknown to plaintiffs. The entire bond issue originally amounted to $2,700,000. Bonds of the par value of $720,000 were paid on or about May 1,

1931, but bonds of the par value of $1,980,000 are still unpaid and outstanding. No interest has been paid on the bonds since November 1, 1931. Inasmuch as the bonds call for an interest rate of 6 per cent. per annum, the amount of past due interest at the present time almost equals that of the unpaid principal. The bonds were sold at par and accrued interest to investment bankers who, in turn, sold them to investors for at least par and accrued interest. The bonds were signed in 1926 by the drain commissioner and county clerk of Macomb county, Michigan. They state that they were issued in compliance with the provisions of Act No. 316, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925,* and that they were payable out of the instalments of the "drain taxes assessed against the lands in said district, and against the State of Michigan, the county of Macomb, and the townships of Warren, Erin and Lake at large."

The proceedings to establish the drain district were begun in 1924 by an application for the establishment of a drain district to be known as the Nine Mile-Halfway Drain District. The structure was called a "drain" in the proceedings. As a matter of fact, it was a very large and deep sewer. It was completed on or about June 1, 1927.

We shall refer frequently to the cases of *Bloomfield Village Drain District* v. *Keefe* (C. C. A.), 119 Fed. (2d) 157 (also known as *Keefe* v. *Nine-Mile Halfway Drain District*), as the *Keefe Case* and *Township of Lake* v. *Millar*, 257 Mich. 135, as the *Township of Lake Case*. Many of the issues which are again raised in the instant case were definitely settled in these two cases, which held that the structure involved in the instant case was a sewer, not a drain, and that there was no liability on the bonds

---

* See 1 Comp. Laws 1929, § 4838 *et seq.* (Stat. Ann. § 11.1 *et seq.*).—REPORTER.

on the part of the so-called "drain district" and others.

In the *Keefe Case,* the court in its opinion quoted from many cases decided in this Court, wherein a similar question arose and wherein we definitely held that Act No. 316, Pub. Acts 1923, as amended, and as it stood at the time the sewers were built did not authorize the construction of the sewer again under consideration in the instant case. In the *Township of Lake Case,* we were much impressed with the description of the structure as stated by Honorable Robert M. Toms, who heard the case in the circuit court for the county of Macomb in chancery. He called attention to the case of *Clinton* v. *Spencer,* 250 Mich. 135, where we held that a sewer could not be built under the then-existing drain act, and that the action of the drain commissioner in authorizing the construction of a large city sewer under an act that only provided for open ditches or small tile drains would result in the confiscation of the property of certain farmers holding adjoining land, inasmuch as the amounts assessed for building the so-called drain exceeded the assessed valuations of their respective farms. Judge Toms, in denouncing the building of the structure, known as "The Nine Mile-Halfway Drain," which is involved in the instant case, stated:

"Every element to make up an urban community is present, including expensive sewers, except people and houses. The pouring of public money by the million in a district of this character for public improvements which would more than adequately serve an area with ten times the present population, constitutes the grossest squandering of public funds, which, if it is not, should be criminal. Real estate promoters who fostered and urged these improvements in the hope that they would be able to pass

the cost along to the purchasers of lots find themselves in the predicament of not being able to dispose of their holdings, and therefore squirm and writhe under the burden of taxation which they themselves helped to create, and in this position they ask the aid of a court of equity to relieve them. As not unwilling confederates to these promoters we find the public officials who derive fat fees from the construction of such projects.''

Judge Toms, however, held that the proceedings should have been brought by certiorari. We held that while irregularities must be corrected by certiorari, the question of an entire lack of jurisdiction may be raised at any time by regular appeal. In holding that the drain commissioner never had any jurisdiction, we stated that the Nine Mile-Halfway drain was not a drain, but, in fact, was a sewer, the building of which, in territory such as this, had no justification either legal or economical. We mention these cases in passing so as to give the background of the many cases that followed.

Counsel for plaintiffs suggest that under the doctrines announced in *Hilt* v. *Weber,* 252 Mich. 198 (71 A. L. R. 1238), and *Bricker* v. *Green,* 313 Mich. 218 (163 A. L. R. 697), we should abandon our decisions in former cases where we invalidated proceedings to construct a sewer under the then-existing drain laws. They ask that we either reverse ourselves or at least not be bound by the doctrine of *stare decisis.* The law of the present case was correctly stated in the *Keefe* and *Township of Lake Cases.* We shall continue to be bound by them.

The so-called drain, a misnomer for a sewer, in the present case consisted of a large underground conduit of concrete and a sewage disposal plant. As stated in the *Township of Lake Case,* ''a sewer was built, about seven and one-half miles long, in

places 35 feet below the surface, a circular concrete barrel, ranging from 6 feet to 11 feet in diameter.'' All of it, with the exception of less than a half mile, was buried deep under the Nine Mile road in Macomb county. Part of it, 2,344.5 feet, was built under a strip of land 26 feet wide running from East Jefferson avenue to Lake St. Clair. This strip was acquired by condemnation proceedings and the title to it stands in the name of Macomb county. A disposal plant was built on a tract of land consisting of 32.5806 acres situate in Lake and Erin townships, Macomb county, Michigan. The title to this land stands in the name of the county of Macomb. The funds for the construction of the sewer and the disposal plant, the acquisition of the strip of land and the acreage for the disposal plant, came from the moneys realized from the sale of bonds. The sewer was connected with other laterals, interceptors, et cetera, to carry away the sewage to the disposal plant. The disposal plant was closed about June 1, 1932, shortly after the decision in the *Township of Lake Case* was rendered and has not been used since that time. Some of the apparatus was removed. For many years after the closing of the disposal plant, the sewage coming through the Nine Mile sewer, as well as from other sewers, laterals and interceptors connected therewith all emptied into Lake St. Clair.

Plaintiffs, in their amended bill of complaint, notwithstanding the arguments in their briefs, make the following allegations:

''By reason of litigation resulting in decisions of the Supreme Court of Michigan entitled *Township of Lake* v. *Millar*, 257 Mich. 135, and of the United States Circuit Court of Appeals for the Sixth Circuit, entitled *Bloomfield Village Drain District* v. *Keefe* (C. C. A.), 119 Fed. (2d) 157, and other de-

cisions of like import, it has now become judicially
established that the Nine Mile-Halfway Drain was
in fact a sewer, for the construction of which there
was no authority of law, that all proceedings for the
establishment and construction of the Nine Mile-
Halfway Drain, the levy of assessments therefor,
and the issue of bonds in anticipation thereof were
absolutely void for want of jurisdiction, and that
said bonds are void.  From these decisions it fol-
lows that neither the Nine Mile-Halfway Drain
District, Macomb county, the county drain commis-
sioner, nor any other municipal or public corpora-
tion, body or officer had any legal jurisdiction,
power, or authority to construct, own, operate or
maintain said Nine Mile-Halfway Drain, so called.''

Some 15 years after the sewer was built, there
was a marked increase in the population and it be-
came imperative to provide for the treatment and
disposal of sewage which was passing through the
sewer into Lake St. Clair.  The State commissioner
of health filed a petition with the probate court of
Macomb county under Act No. 316, chap. 17, § 5a, Pub.
Acts 1923, as added by Act No. 179, Pub. Acts 1939,
and amended by Act No. 128, Pub. Acts 1941 (Comp.
Laws Supp. 1945, § 4974–1, Stat. Ann. 1946 Cum.
Supp. § 11.138[1]), to make the sewage disposal
plant again operative.  The proceedings were begun
but evidently abandoned because of the adoption of
a more extensive plan.  The Federal government
became very much interested because of housing
conditions for war workers and factories which had
been built in Macomb county and which were manufac-
turing war materials.  It was proposed that with the
aid of the Federal government, intercepting sewers
and other means of disposing of sewage be built so
that the sewage from the southern part of Macomb
county could pass through the sewer in question in

this case, as well as through another sewer, laterals, interceptors, et cetera, so as to reach the city of Detroit to be treated by the latter's treatment plant. The board of supervisors of Macomb county adopted two resolutions making it possible to do this. A sewage agreement was entered into between the counties of Macomb and Wayne by which, with the aid of the Federal government, the building of interceptors, et cetera, sewage from the southern part of Macomb county emptied into the sewage system of the city of Detroit and was treated by the latter's sewage treatment plant.

We need not discuss the various arrangements and contracts with the Federal government which leased two large interceptors it had built as a war public works project to the county of Macomb. The county agreed to operate the leased property on a revenue-producing basis and to maintain, adjust and repair it. The government thus became interested in the entire project. Revenues were collected by the county for the use of the facilities furnished by the government, and proper charges made so as to pay the government in accordance with the contract. Until assistance was received from the government, the entire sewer system had remained in a most unsatisfactory state. The use of the so-called Nine Mile drain together with another sewer, laterals and interceptors in no way had previously solved the problem of satisfactory and sanitary sewage disposal.

In *City of Highland Park* v. *Royal Oak No. 7 Storm Sewer Drain District*, 309 Mich. 646, we were confronted with a somewhat similar situation as is presented here. Plaintiffs in their bill of complaint admit that original assessments for the construction of the so-called drain included assessments at large

against the State of Michigan, county of Macomb, townships of Erin and Lake, all or part of which have been paid. They further allege that certain property owners using the sewer purchased their property at "scavenger" sale. These parties claim that they cannot be assessed for the use of drain or sewer built prior to the time they obtained title. It is claimed that many land owners had paid their assessments in full previous to the time that the entire project was declared illegal. In *City of Highland Park* v. *Royal Oak No. 7 Storm Sewer Drain District, supra,* we reviewed many cases which controlled our decision. These included *City of Highland Park* v. *Oakland County Drain Commissioner,* 300 Mich. 501, in which we again held that a so-called drain was a sewer, not a drain, and that the action of the county drain commissioner in building a sewer when he had no legal authority to do so was beyond his jurisdiction, that the proceedings were void, and the so-called drain district was not estopped from disclaiming liability for bonds notwithstanding taxpayers have profited by the commissioner's unauthorized acts.

In *City of Highland Park* v. *Royal Oak No. 7 Storm Sewer Drain District, supra,* the questions were raised for the first time in this Court as to the duty to operate a sewage system on a revenue basis so as to raise funds for the payment of bonds that had been issued without warrant of law; also as to rights to the conduits laid in the property not belonging to plaintiffs, and also whether or not plaintiffs were guilty of laches. Inasmuch as these questions were not directly raised in the trial court, we declined to consider them.

The bill of complaint in the instant case was filed December 10, 1942. The case went on the "no prog-

ress" docket, but an amended bill of complaint was filed on May 10, 1945. In the main argument of plaintiffs in the present case, besides attacking many decisions of this Court on a similar question, they contend that the moneys of the bondholders went into construction of a sewer, that it constitutes a very essential, if not the most important and vital, part of the intricate sewage system of lower Macomb county, and that even though the Court should adhere to its former decisions that there is no liability on the part of the district drain commissioner, the county or any one else for payment of the bonds, nevertheless, the bondholders who furnished the moneys to build the sewer should be paid in full or at least in part for the moneys so advanced from revenues to be exacted from the users of the sewers.

It was suggested at the oral argument that revenue bonds should be issued to the former bondholders for such amount as the court should determine after the taking of testimony and the consideration of the various elements that went into the integrated sewer system which was now functioning after the aid of the Federal government and the contract with the city of Detroit. Plaintiffs sought to name as defendants the so-called drain district, the county of Macomb, the latter's supervisors, the county drain commissioner, various municipalities, the State highway commissioner and others besides, also various representatives of all classes that might be interested in the outcome of the litigation. Almost all of them appeared specially and either moved or joined in the motion to dismiss the amended bill of complaint. In this motion they alleged that the Nine Mile-Halfway drain district was nonexistent, could not be sued as it had been legally determined

that all proceedings in connection with the establishment of such drain district were void for want of jurisdiction, and there was no liability in the bonds by the nonexistent drain district. *Keefe* v. *Nine-Mile Halfway Drain District, supra; Township of Lake* v. *Millar, supra.*

Defendants further claim that the Federal government should have been named as a proper and necessary party to the litigation. Defendants also raised other defenses including *res judicata,* laches, *stare decisis,* and that the law as applied to this case is settled with finality in the *Township of Lake* and *Keefe Cases,* as well as *City of Highland Park* v. *Royal Oak No. 7 Storm Sewer Drain District, supra.*

In *City of Highland Park* v. *Royal Oak No. 7 Storm Sewer Drain District, supra,* we listed and reviewed the many drain cases that had arisen in this State where we held that a sewer could not be built under the old drain law and that no rights accrued to bondholders from an illegal project of that nature, under the facts as disclosed. We called particular attention to *McCurdy* v. *County of Shiawassee,* 154 Mich. 550, and to *Litchfield* v. *Ballou,* 114 U. S. 190 (5 Sup. Ct. 820, 29 L. Ed. 132), the leading case on the subject, and which we particularly relied upon in coming to our decision that there was no liability.

It is unnecessary to state other reasons upon which the motion to dismiss was based in the instant case. The trial court entered an order dismissing the bill of complaint on the ground that plaintiffs' alleged cause of action was barred by the judgment entered in *Keefe* v. *Nine-Mile Halfway Drain District, supra,* as well as *Township of Lake* v. *Millar, supra;* also because plaintiffs were guilty of laches; because defendant Nine Mile-Halfway drain district

was without legal existence; also because under the ·
rule of *stare decisis*, the law in the case as pre-
sented, has been established; and further, because
Act No. 342, Pub. Acts 1939, as amended by Act No.
353, Pub. Acts 1941 (Comp. Laws Supp. 1940, 1945,
§ 2486-91 *et seq.*, Stat. Ann. 1946 Cum. Supp.
§ 5.2767 [1] *et seq.*), which we shall hereafter dis-
cuss, does not authorize the relief sought for .by
plaintiffs. While on a motion to dismiss, allegations
well pleaded in the bill of complaint must be taken
as true, plaintiffs, who endeavored to assist the
court, agree in their briefs that the facts as stated
in the pleadings are substantially correct, that there
are very few questions of fact, nor do they dispute
affidavits filed by defendants calling attention to rec-
ords. which were filed with the motion to dismiss.

On appeal, plaintiffs contend that the court erred
in holding that plaintiffs' suit was barred by former
adjudications. We cannot agree with .this conten-
tion. Plaintiffs, however, claim that in any event
they are seeking a different form of relief in the in-
stant case and in that respect, the case differs from
*Township of Lake* and *Keefe Cases,* in which the
illegality of the so-called drain was determined with
finality. Plaintiffs call attention to other cases
involving drains which we held were legal. In *City
of Highland Park* v. *Royal Oak No. 7 Storm Sewer
Drain District, supra,* the very claims now made by
plaintiffs were decided adversely to them. Plain-
tiffs are correct in their contention that in a few
close cases of similar character, this Court has de-
cided in favor of the bondholders, but these cases
had an entirely different factual background. The
strongest case of them is *Hankinson* v. *Deake,* 265 .
Mich. 1, where in the majority opinion of a divided
court, it was held that the nature of the structure
showed that it was built for a drain; that it per-

mitted the seepage of surface waters through the seams and the fact that some sewage passed through it did not change its main purpose to carry off surface waters. The drain in that case was of a far different construction than the sewer under consideration in the instant case.

We have not overlooked the equitable considerations that plaintiffs ask us to consider and to which we have given due consideration in other cases. However, this particular drain or sewer was declared an illegal project in 1932, and plaintiffs waited until December 10, 1942, before they filed their bill of complaint, and then they waited until May 10, 1945, to file their amended bill of complaint. In the meantime, the entire situation had changed. Other interests have arisen and we have now an integrated sewer system in which some new interests appear. We believe the court was correct in holding that plaintiffs were guilty of laches as far as the sewer is concerned. From the facts as disclosed by plaintiffs' bill of complaint and with new interests that have arisen in this integrated sewer system, of which the sewer in question is one of the most important, if not the most essential, constituent part, and with many diverse interests that have either paid for the sewer or have been relieved from further payments, or are bound to pay for the use of the present sewage system by way of taxes of assessments or rates, the picture has changed. The defense of laches is fatal to plaintiffs' main claim. It is unnecessary, however, to base our decision on the ground of laches alone inasmuch as the other defenses of *res judicata* and *stare decisis* are sufficient.

Plaintiffs claim, however, that Macomb county acquired the Nine Mile-Halfway drain district under the power granted by Act No. 342, Pub. Acts 1939,

as amended by Act No. 353, Pub. Acts 1941. The act in its amended form authorized counties to acquire and operate sewers, to purchase or accept as a gift or condemn private property necessary therefor, to issue self-liquidating revenue bonds for locating, acquiring and purchasing, extending and moving or preparing water sewer or disposal improvements; to enter into agreements by which cities, villages, townships should pay the county for the water and sewage facilities, et cetera; to fix rates, charges, et cetera, to be paid. Plaintiffs call special attention to section 4 of the act which states:

"The complete and actual cost of improvements and financing thereof may be included in the amounts fixed for rates, charges and/or assessments for services rendered by the county to the other units of government."

The act was upheld in *Oakland County Drain Commissioner* v. *City of Royal Oak,* 306 Mich. 124. In the instant case the county acquired the sewer in the method hereinbefore stated, and not through any subsequent legislative act. The query is, from whom could the county acquire a sewer illegally constructed and deeply imbedded, in some places 35 feet, in its own street? We find no merit whatsoever in plaintiffs now asking that they be given a portion of the revenue that might be exacted from any of the users of the sewer or by the issuance of revenue bonds in some form to be determined by this Court. We believe the issuance of such bonds in lieu of other forms of payment presents the same questions that have been heretofore decided.

Plaintiffs rely heavily on the case of *Gray* v. *Dingman,* 279 Mich. 62 (110 A. L. R. 274), where a sewer was begun under the old drain law in November, 1929. Contracts had been previously let prior to

the ·decision in *Clinton* v. *Spencer,* 250 Mich. 135, on or about March 7, 1930. Payments had been made to the contractor out of the general fund of the county in anticipation of the issuance of bonds. In the meantime, the drain law had been amended by Act No. 318, Pub. Acts 1929, to permit the construction of sewers. A new petition was filed on April 5, 1930, for the laying out of the drain district in which a sewer could be built under the amended act (Act No. 318, *supra*). We held that under the conditions as presented, bonds could be issued to pay for the work that had been both theretofore and thereafter done by the contractor. This is a far cry from the present case. No such proceedings were ever instituted. The sewer in question was constructed under the old drain law and was an illegal project, as we have heretofore determined.

Plaintiffs, in the last analysis, fall back on the question of elemental justice. They claim in equity and in good conscience they are entitled to recover all or at least part of the moneys they paid for the bonds, and that was used for the construction of this sewer. They repeat the claims made in prior litigation, that fraud was practiced by the drain commissioner on the investment bankers who purchased the bonds. A complete answer was found to this latter claim in *Keefe* v. *Nine-Mile Halfway Drain District, supra.* Plaintiffs, however, ask that we impose a constructive trust in their favor upon the sewer irrespective of whether we do so on the ground of "fraud that was practiced," unjust enrichment, the right of restitution, restitution, or on the basis of good conscience and equity. In the former cases we called attention to *Litchfield* v. *Ballou, supra,* and *McCurdy* v. *County of Shiawassee, supra.* We rely upon *Litchfield.* v. *Ballou, supra,* for authority, the

same as we did in *City of Highland Park* v. *Royal Oak No. 7 Storm Sewer Drain District, supra,* where a similar question was raised.

Other questions raised by plaintiffs we have carefully considered and find without merit. Time and space prevent a fuller discussion of questions that we have briefly reviewed. We find no reason to change the conclusions reached in cases hereinbefore referred to, nor do we believe that plaintiffs may collect their bonds by the exacting of revenue from the users of the Nine Mile-Halfway sewer or the integrated sewer system or by the issuance of revenue bonds.

One other question of considerable merit does present itself. If plaintiffs are correct in their contention, something we cannot determine on a motion to dismiss, the county of Macomb became the owner of 32.5806 acres of land in Macomb county on which the disposal plant was built. According to the record, this plant was abandoned and is no longer a constituent part of the sewage system in southern Macomb county. Plaintiffs assert that this acreage and what is left of the plant placed thereon was purchased solely with funds obtained from plaintiffs and the other bondholders. The claim of laches does not appeal to us in regard to plaintiffs' claims of rights in this plant. It may be claimed, not wholly without some justification, that those who heretofore through payment of taxes or assessments contributed toward the acquisition of this acreage and the construction of the disposal plant have an interest. This is largely offset by the benefits, if any, they received from the construction of the sewer. The moneys of the bondholders obtained for an illegal project can be traced directly into the acquisition of this acreage and the disposal plant, which became completely separated from the sewer

system of southern Macomb county. We believe that if plaintiffs' allegations in regard to this acreage and the plant thereon are true, a constructive trust should be impressed thereon in favor of plaintiffs and other bondholders; otherwise the county of Macomb would be unjustly enriched by the acquisition of property not used for public purposes. In *City of Highland Park* v. *Royal Oak No. 7 Storm Sewer Drain District, supra,* we held that the surplus unexpended money should be divided pro rata among the bondholders; in the instant case a like question is presented whether a constructive trust should be impressed upon certain property purchased with bondholders' money which, under the above case, might appear to be held in trust for the bondholders. The case should be remanded for hearing by the trial court and its determination upon this one question alone, and it is so ordered.

Decree will be entered in this Court affirming the decree of the trial court as modified by this Court, and for remanding the case for determination in accordance with this opinion. No costs will be allowed.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.